MELVIN B. MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 17870-92
United States Tax Court
T.C. Memo 1994-142; 1994 Tax Ct. Memo LEXIS 143; 67 T.C.M. (CCH) 2588; March 31, 1994, Filed *143 For petitioner: Walter J. Russell. For respondent: Tanya M. Marcum. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: [1] Petitioner has filed a motion for an award of reasonable administrative costs and a supplemental motion for litigation costs and fees pursuant to Rule 231 [2] and section 7430. Respondent determined on May 19, 1992, a deficiency in petitioner's Federal income tax for taxable year 1988 in the amount of $ 9,502, together with additions to tax under section 6651(a)(1) in the amount of $ 1,965 and under section 6661 in the amount of $ 2,376. Petitioner Melvin B. Miller timely filed his petition for redetermination in this Court on August 10, 1992. Subsequently, respondent conceded the entire case, and we entered a stipulated decision *144 in petitioner's favor on April 28, 1993, which was vacated on May 13, 1993, in order to allow petitioner to file the motions for costs. Consequently, the sole issue for decision is whether petitioner is entitled to an award of reasonable litigation and administrative costs under section 7430. Some of the facts have been stipulated, and they are so found. The stipulation and exhibits attached are incorporated herein by reference. Petitioner resided at Fruitport, Michigan, when he timely filed his petition herein. During 1988, petitioner was the president and a 50-percent shareholder of M & M Carpet Brokers of Michigan, Inc. (M & M), an S corporation. M & M is a manufacturer's representative which sells carpeting for several carpeting mills and is paid commissions on the carpet it sells. M & M pays a salary to petitioner. One of the carpet mills, Whitecrest Carpet Mills, Inc. (Whitecrest), paid M & M commissions totaling $ 30,222 in 1988. Whitecrest filed a Form 1099 indicating that it paid such amount to M & M, but erroneously placed petitioner's social security number on the Form 1099. The issue upon which respondent determined the deficiency in this case was whether petitioner *145 should have included as income on his personal tax return the $ 30,222 paid by Whitecrest. Respondent included this amount in petitioner's income in the notice of deficiency. The accountant and tax return preparer of M & M and petitioner, Dorothy Lapham, represented petitioner under a power of attorney in the audit by the Internal Revenue Service. Lapham first met with the auditor on October 11, 1990. At this meeting, the auditor questioned Lapham not only about the Whitecrest Form 1099, but also about other issues. Lapham told the auditor that the taxpayer identification number on the Form 1099 was incorrect and that the payee of the $ 30,222 in commissions was M & M and not petitioner. In attempting to resolve the issue of who earned the Whitecrest income, respondent sought substantiation from Lapham that the income was the corporation's. Respondent tried to ascertain in which bank account the income was deposited and whether the income was reported on the corporate return. Lapham informed the auditor of the existence of several bank accounts from which petitioner was able to withdraw funds. Some were labeled as business accounts, some as personal, and some as both. Lapham *146 stated that the $ 30,222 was deposited into an account which was labeled an M & M account, but that petitioner also treated the account as a personal account on occasion. Respondent then attempted to conduct a bank deposit analysis to ascertain whether petitioner had any unreported income, and requested bank statements for all business and personal accounts for petitioner and M & M for the year 1988, December of 1987, and January of 1989. Over the course of about 2 1/2 years, respondent issued three Information Document Requests asking for statements of all the accounts, along with checks, a copy of M & M's corporate return, and any other documentation proving that the Whitecrest income was deposited in the corporation's business account and duly reported on the corporate return. In the periods between the document requests, Lapham and respondent corresponded, and Lapham furnished some but not all of the requested documentation. Through his representative, petitioner supplied some bank statements and some deposit slips from some of the accounts. Although petitioner was satisfied that the necessary documentation had been supplied, respondent decided that more specific information *147 was needed to resolve the issue. Petitioner did not furnish a 1988 M & M corporate return or a revised Form 1099 until well after the notice of deficiency was issued. Likewise, petitioner did not supply the entirety of the requested bank statements until after the mailing of the deficiency notice on May 19, 1992. On June 9, 1992, petitioner's counsel, Mr. Russell, then requested that the case be returned to the examination branch of the Internal Revenue Service with a request that the notice of deficiency be rescinded. Mr. Russell was unavailable for a July meeting, and the deficiency notice was not rescinded. However, petitioner's counsel met with the revenue agent on August 14, 1992, at which time a copy of the M & M return was provided, as well as a corrected Form 1099 from Whitecrest. Also, the remaining M & M deposit slips were provided by petitioner. By the time of this meeting, the petition in the Tax Court had been filed. Since a petition had been filed, the matter was referred to respondent's Appeals Office, and petitioner was contacted on October 8, 1992. After telephone conversations between the appeals officer, petitioner, and his counsel, respondent agreed to *148 concede the case. In summary, by August 14, 1992, nearly 3 months after the issuance of the deficiency notice, and 10 days after petitioner mailed his petition to the Court for filing, respondent received substantially all of the requested documentation. Shortly thereafter respondent conceded her case in full but not until petitioner had expended funds for attorneys fees and administrative costs. [3]
Section 7430 allows this Court to award reasonable administrative and litigation costs to the prevailing party in civil tax litigation. To obtain an award for administrative and litigation costs, petitioner (1) must have exhausted all administrative remedies available, (2) must not have unreasonably protracted the proceedings, *149 (3) must satisfy the statutory definition of "prevailing party" as defined in section 7430(c)(4)(A)(iii), and (4) must show that the costs claimed are reasonable. Sec. 7430(b) and (c). Petitioners must establish all of the above elements in order to recover such an award. Minahan v. Commissioner, 88 T.C. 492, 497 (1987). To be considered a prevailing party within the definition of section 7430(c)(4), petitioner must show, inter alia, that (1) the position of the United States was not substantially justified, (2) petitioners prevailed with respect to the amount in controversy or with respect to the most significant issues, and (3) petitioners satisfied the net worth requirements of 28 U.S.C. section 2412(d)(2)(B) (1988) on the date the petition was filed. Sec. 7430(c)(4)(A). Respondent argues that petitioner failed to show that respondent was not substantially justified in this proceeding. Clearly, petitioner has prevailed with respect to the amount in controversy. We do not reach the other issues, because we find that respondent's position was substantially justified. The "not substantially justified" standard *150 under section 7430 is applied as of the separate dates respondent took positions in the administrative and judicial proceedings. See sec. 7430(c)(7). The term "position of the United States", for purposes of administrative costs, means the position taken in an administrative proceeding, determined in this case as of the date of the notice of deficiency. Sec. 7430(c)(7)(B). Thus, we look to the date of the notice of deficiency, May 19, 1992, for the administrative costs. The "position of the United States" for purposes of litigation costs refers to the position of the United States in a judicial proceeding. Sec. 7430(c)(7)(A). A judicial proceeding in this Court is commenced with the filing of a petition. Rule 20(a). That date was August 10, 1992. Generally, respondent initially takes a position on the date she files her answer in response to the petition. Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part on other grounds and remanding T.C. Memo. 1991-144; Han v. Commissioner, T.C. Memo. 1993-386. Respondent filed her answer in this case on September *151 21, 1992. In determining whether respondent's position was substantially justified, this Court will consider the basis of respondent's position and the manner in which respondent maintained that position. Wasie v. Commissioner, 86 T.C. 962, 969 (1986). This, in turn, depends upon a finding that the position had a reasonable basis in law and fact, taking into account the facts and circumstances available to respondent at the time. Comer Family Equity Pure Trust v. Commissioner, 958 F.2d 136, 139-140 (6th Cir. 1992), affg. per curiam T.C. Memo. 1990-316; Devenney v. Commissioner, 85 T.C. 927, 930 (1985). The Court will also consider: (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the Court finds relevant * * *
Sher v. Commissioner, 89 T.C. 79, 85 (1987) *152 (quoting H. Rept. 97-404, at 12 (1981)), affd. 861 F.2d 131 (5th Cir. 1988). The fact that respondent eventually loses or concedes the case does not per se establish an unreasonable position. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); VanderPol v. Commissioner, 91 T.C. 367 (1988). Petitioner has the burden of proof on all issues relating to his claim. Rule 232(e); Rutana v. Commissioner, 88 T.C. 1329, 1332 (1987). We look now to the manner in which respondent maintained her position throughout the proceedings. As of the date the notice of deficiency was issued, respondent had received certain items of documentation tending to show that the income was earned by the corporation and deposited by the corporation. However, with the documentation submitted by petitioner, we cannot say that the issue of unreported income had been resolved. Respondent still had legitimate questions concerning the receipt of and the reporting of the income. Petitioner submitted only portions of the requested M & M savings account statements. Although respondent had on numerous *153 occasions clearly requested bank statements from the entire 1988 taxable year, as well as the preceding month and the following month, petitioner provided only statements from some of the months. Petitioner failed to provide respondent a copy of other requested information, such as the corporate M & M return for 1988, until well after the deficiency notice was issued. Petitioner had more than ample opportunity to comply with respondent's requests so that a thorough bank deposit analysis could be performed and so that respondent could be assured that the appropriate tax entity reported the income in question. There is no indication in the record that respondent undertook a position in the administrative process that was not substantially justified. Petitioner failed to prove that respondent's position during the administrative proceedings was not substantially justified, and we hold that petitioner is not entitled to an award for reasonable administrative costs. With respect to respondent's position during the judicial proceedings, we look to the period from the date on which the answer was filed, September 21, 1992, to the settlement of the matter. Again, petitioner failed to *154 prove that respondent's position during this portion of the proceedings was not substantially justified. At the August 14, 1992, meeting, petitioner's counsel finally provided respondent with the documentation which was later used to concede the issue by the Appeals Office. Such substantiation included a revised Form 1099 which included the corporate identification number, a copy of the corporate return, and a compilation of documents and cancelled checks tending to show that the money was deposited in the corporate account and reported by the corporation. At this point, however, the record of bank statements was still incomplete. The record indicates that District Counsel in Detroit received the administrative file after the August 14 meeting. Respondent filed her answer on September 21, 1992 and then forwarded the case to the Appeals Office for consideration on September 24, 1992. Shortly thereafter, on October 8, 1992, the appeals officer began communication with petitioner's counsel. After a couple of telephone conversations and statements by petitioner's counsel concerning testimony that would be offered for trial, the appeals officer agreed to concede the case. We are *155 satisfied on this record that respondent acted in a timely fashion by conceding the case, and petitioner failed to prove otherwise. After respondent receives documentation, she is entitled to a reasonable period of time in which to analyze the documentation and modify her position. See Sokol v. Commissioner, 92 T.C. 760, 765 n.10 (1989) (citing several cases in which respondent was given a reasonable period of time in which to resolve a factual issue after receiving all relevant information). Since the Government proceeded in an orderly and timely fashion to concede the case after receiving the necessary substantiation, we find that the position of the United States was justified. Petitioner failed to establish that respondent's position during the administrative or judicial proceedings was not substantially justified, and we hold that petitioner is not entitled to either an award for reasonable litigation costs, or for administrative costs. An appropriate order and decision will be entered. Footnotes
1. This case was assigned pursuant to the provisions of Rules 180 and 182.↩
2. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent maintains that even with the documentation eventually supplied by petitioner, respondent is still unsure as to which taxpayer earned and reported the income in question. Given the fact that respondent has conceded her case, we do not take this statement seriously and accord it no weight.↩